Court of Chancery—In re Henderson.

---

In the matter of the petition of FRANCIS HENDERSON for appointment as the next friend of ANNIE L. CLARKE, a person of unsound mind.

[Decided June 20th, 1924.]

**Guardian—Lunacy—Application for Appointment of Next Friend for Purpose of Making Application for Special Guardian of One Heretofore Adjudged Insane.**

On petition for appointment of next friend, &c.

*Mr. Earl A. Merrill,* for the petitioner.

WALKER, CHANCELLOR.

The petition recites that Annie L. Clarke, a widow, about eighty years of age, was ordered committed to the New Jersey State Hospital for the Insane at Morris Plains, by the judge of the common pleas of Union county; that no application for the appointment of a guardian has been made either to this court or the orphans court, and that no inquest of lunacy has been had; that Mrs. Clarke is possessed of certain personal property to the amount of about $3,500 and has an income from the federal government by way of pension; that petitioner is not related to Mrs. Clarke, who was for many years employed in his family, and since she has become incapacitated for work he has looked after her interests until her confinement in the hospital, and that her domicile is in petitioner's home. The prayer is that because she is unable to attend to her own affairs, leave of this court is asked by petitioner to act as her next friend in order that he may make a further application on her behalf for the appointment of a special guardian to conserve her estate, pay her debts and for her maintenance.

This is not a proceeding for the appointment of a next friend to sue for the recovery of property belonging to a person *non compos mentis,* as was the case in *Collins* v. *Toppin,* *65 N. J. Eq. 439; affirmed, 66 N. J. Eq. 430; Kroehl* v. *Taylor, 69 N. J. Eq. 525.* Nor is it an application to the court of chancery to determine the question of the lunacy or insanity and appoint a guardian for a person, without an inquisition of lunacy and the intervention of a jury under *P. L. 1915 p. 57,* which act was declared unconstitutional, because denying the right of trial by jury. *In re McLaughlin, 87 N. J. Eq. 138.* But it appears to be in the nature of an application for appointment of a guardian for a person adjudged insane by the court of common pleas and committed to the state hospital at the expense of her estate under *P. L. 1916 p. 182,* which was involved *In re Braune's Estate, 103 Atl. Rep. 412.* This act was superseded by *P. L. 1918 p. 343* (see, especially, *p. 372 ¶ 401 et seq.*), and was repealed by *P. L. 1918 pp. 1050, 1052.*

Court of Chancery—In re Henderson.

*In re Braun's Estate,* Stevens, vice-ordinary, on appeal from the orphans court, in a case where a guardian had been appointed apparently by the court of common pleas (although the report does not disclose that fact), without notice to her, affirmed the proceedings because the appeal was brought by an unauthorized person, but said that if an appeal had been taken by or on behalf of the subject of the proceedings. Mrs. Braun, he would have advised an order of reversal. He expressed no opinion on the constitutionality of the act in question (1916).

I find that there have been several cases in this court under that act (1916) for the appointment of a guardian on adjudication of insanity in the common pleas, and the application here was for the appointment of a guardian to conserve the estate of the person *non compos,* notably, Mary Diki (Dicky) (46-230); Joseph Rogowski (46-230); Anna Moore (46-230); Alois Hochreimer (46-230), in which guardians were appointed on the advice of Vice-Chancellor Lane. I do not feel that it is necessary for me to pass upon the constitutional question referred to—certainly not unless and until it is raised by the subject of the proceedings for whom a conservation guardian is applied for.

The result I have reached is, that the present application must be denied and the petition dismissed, but without prejudice to the filing of a petition for the appointment of a conservation guardian to pay for the maintenance of Mrs. Clarke in the state hospital out of her estate, as was done in the Dicky, Rogowski, Moore and Hochreimer cases.